LEIGH M. CLARK, Retired Circuit Judge.
Appellant-defendant was indicted for murder in the first degree of Shequita Denise Lamar by allegedly “beating her with his fist, belt or by means otherwise unknown to the Grand Jury.” A jury found him guilty of murder in the second degree *337 and fixed his punishment at imprisonment for thirty years. He was sentenced accordingly.
The alleged victim was a two-year-old child of Diane Mims, with whom defendant had been living at an apartment in West End, Birmingham, for about a month at the time of the death of the alleged victim. Diane Mims had two other children, Anthony Wayne Mims and Tyrone Collier. Both Shequita and Anthony were living with her and defendant from the time that Diane and defendant started living together, but during that time her oldest child, Tyrone, was living with Diane’s mother.
About 6:00 A. M. on December 26, 1975, defendant and Diane brought Shequita to the emergency room of the Children’s Hospital, where she was examined and sent to the University Hospital, where she expired on December 29 at 11:15 A. M. At the time she was brought to the Children’s Hospital she had numerous abrasions and contusions on her body, including her head, from which she never recovered and which, according to medical testimony, caused her death. Both defendant and Diane were charged with the murder of Shequita. Diane was one of the main witnesses against defendant.
Before Diane commenced her testimony as to anything that could incriminate her, her employed counsel was notified to be present in order for him to counsel the witness as to any potential violations of her constitutional right not to incriminate herself; her counsel remained in the courtroom for that purpose during all of her testimony. She testified that defendant "whooped” Shequita severely for wetting her pants about 7:00 or 8:00 P. M. December 25. The child was put to bed and some time thereafter it was observed that she was unconscious. Not being able to revive her, they took her to the Children’s Hospital.
At the conclusion of the cross-examination by defendant’s counsel of the mother of the alleged victim, the record shows:
“MR. GWIN: That’s all I have at this time.
“THE COURT: Anything else?
“MR. GWIN: I reserve the right to recall her.”
At the conclusion of the State’s redirect examination of the witness, the record shows:
“MR. BLOCKER: That’s all I have got.
“THE COURT: All right. Anything else?
“MR. GWIN: That’s all I have right now. I would like to reserve the right to recall her later.
“THE COURT: All right. Thank you, Mrs. Mims, you may step out.”
The witness succeeding Diane as a witness was an officer who testified that after the arrest of Diane and defendant and while they were together in the custody of officers, and after the two had been fully advised of their rights to counsel at no expense to them and warned and advised as to their rights against self-incrimination, Diane turned and looked at appellant and said, “You did it. You beat my baby.” And then appellant looked at Diane and said, “Shut up, because you done it, too.” There is no contention that the “baby” to which reference was made was not Shequi-ta, even though Anthony was younger than Shequita.
After the officer following Diane as a witness had testified, counsel for defendant said, “I want to recall Mrs. Mims, if I can,” and the court said in reply, “All right. But we will have to call Mr. Durward [her counsel], if you do.” Thereupon a recess was declared and a lengthy colloquy took place among the trial judge, State’s counsel and defendant’s counsel, in which defendant’s counsel stated that he proposed to question Diane “with regard to statements she made to the Birmingham Police Department after being arrested concerning either her guilt or innocence or this Defendant’s guilt or innocence, meaning Joe Turner, on the charge of murder of Shequita Lamar and the charge of child abuse on Anthony Mims.” He further said that the particular statement by her that he wished to show by her testimony upon recall “would have been that neither Joe Turner” nor the witness *338 was “responsible for any injuries to Anthony Mims, which would in effect exonerate, that testimony by her would exonerate Joe Turner from the child abuse charge.” After a hearing by the court of the respective positions of the parties, the court let it be known that it would sustain objections to questions that defendant’s counsel proposed to ask Diane as to what she had said relative to the guilt or innocence of defendant of the charge of child abuse of Anthony Mims. Appellant urges the stated action of the trial court as his only basis for a reversal.
Appellant, with commendable frankness, asserts that, although he has no direct authority or precedent for his only claim for a reversal, his claim is correct by analogy to the principle that permits some exceptions to the rule of exclusion of testimony in a criminal case of other crimes committed by defendant. He concludes that the same rationale that permits such exceptions to the rule of exclusion of testimony of other crimes should enable defendant to show that he is innocent of other crimes with which the evidence shows he is charged. Whether so or not, the court’s ruling was not that he should not be allowed to show that he was not guilty of child abuse of Anthony. The court’s ruling was that he was not entitled to show a statement made by Diane tending to exonerate defendant of child abuse of Anthony.
Appellant does not, and did not, contend that the evidence sought from Diane would have been admissible as substantive evidence but that it would have been admissible as impeaching testimony, that is, testimony impeaching her as a witness. We find nothing in her lengthy testimony, tending in any way to show that defendant had abused Anthony. If she had been allowed to be recalled and had testified that she, in making a statement to officers to the effect that defendant had been the cause of She-quita’s death, said that defendant had not abuse Anthony, such evidence would not have been in disparagement of her as a witness as to any of her testimony. At no time during her testimony did she state any conversation between her and another as to defendant’s guilt or innocence of the crime charged in the instant case.
There was testimony by another witness, as quoted above, as to what Diane had said in' the presence of defendant as to his battery of Shequita, in which there was no reference to any abuse of Anthony. What such witness would have said that Diane said on that question, we do not know. If he would have said that Diane said that defendant had not abused Anthony, that would have been all that defendant could have desired in connection with this particular question. On the other hand, if such witness had testified that Diane did not say that defendant had not abused Anthony, he would have been the one, not Diane, who would have been subject to impeachment as a witness by the proposed testimony of Diane. The trial court was not in error in the respect urged by appellant.
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.